IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ANTHONY KELLY, #352736<br>Plaintiff | * | |
| v. | * | CIVIL ACTION NO. AW-10-770 |
| J. MICHAEL STOUFFER<br>BOBBY P. SHEARIN | * | |
| MARTIN O'MALLEY<br>Defendants. | * | |

***

**MEMORANDUM**

Plaintiff filed this access-to-courts case complaining that his civil rights were violated under the Americans with Disabilities Act ("ADA") and 42 U.S. C. § 1983 because there is no law library at his current prison facility, the North Branch Correctional Institution ("NBCI"). He claims that Defendants have failed to provide him an adequate legal access program and/or assistance from persons trained in the law. Paper No. 1. Plaintiff states that he filed a federal habeas corpus petition which is pending on certiorari in the U.S. Supreme Court. He further alleges that he filed a petition for post-conviction relief in the Circuit Court for Montgomery County. Plaintiff states that he is representing himself and has several legal cases that he needs to review. He complains that inmates have no access to law books, but acknowledges that the librarian will order legal cases for an inmate. He complains that each inmate is limited in the number of cases he can order each week and that it takes about 3 to 4 weeks for the copies of the cases to be received by NBCI inmates. *Id*.

Currently pending before the court is Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. Paper No. 14. An opposition was subsequently filed. Paper No. 17. The case is ready for consideration. No hearing is deemed necessary. *See* Local Rule 105.6. (D. Md. 2010). For reasons to follow, Defendants' pleading, construed as a motion for summary judgment, shall be granted.

Fed. R. Civ. P. 56(c)(2) provides that summary judgment:

> should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc*., 477 U. S. 242, 247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to....the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

Defendants offer multiple grounds for dismissal arguing that a claim has not been stated, plaintiff has failed to exhaust his administrative remedies, and there is no genuine dispute of material fact that Plaintiff has been provided adequate access to legal materials. Paper No. 14 at Memorandum. Relying on the declaration of Librarian Mary Huebner, they state that NBCI inmates have the same access to legal materials as inmates at other Maryland Division of Correction ("DOC") facilities. *Id.*, at Huebner Decl. According to Defendants, NBCI has a central library which inmates on general population, such as Plaintiff, can use for research[1] and each housing unit has a smaller housing unit library.

Defendants further argue that NBCI has one librarian with a master's degree in library science available to assist inmates with legal research. In addition, four inmate clerks assist with the library, one of whom is familiar with legal research and available to assist other inmates. Neither the librarian nor the inmate clerks provide legal advice.

Huebner affirms that since January 2010, Plaintiff has visited the central library with his housing unit and has also obtained a pass for extra central library research on nine occasions.[2] In addition, since January of 2010, Plaintiff has made LASI requests on eight occasions. Each request included up to five cases.

---

[1] Defendants maintain that the central NBCI library contains numerous legal research materials including the Maryland State Code, Black's Law Dictionary, and a treatise on ineffective assistance of counsel. Paper No. 14, Huebner Decl. In addition, NBCI inmates have access to the Lexis database "Premise" in both the central and housing unit libraries. Inmates may use Premise to research cases and legal materials. Once an inmate locates a case using Premise, he can request the full text of the case from a central facility in Baltimore using the Library Assistance to State Institutions ("LASI") service. Inmates may request five cases each week. Defendants affirm it takes about three weeks for each case to arrive due to the large NBCI inmate population and the fact that all DOC facilities use LASI. *Id.*

[2] A log of visits to NBCI housing unit libraries is not maintained. Paper No. 14, Huebner

Defendants further claim that Plaintiff has grieved the issue of access to adequate legal research materials to the Warden and to DOC Headquarters in 2010, but has not filed any grievances with the Inmate Grievance Office ("IGO") since September 23, 2009. *Id.*, Oakley Decl.

The court shall first examine Defendants' assertion that the case should be dismissed in its entirety due to Plaintiff's failure to exhaust available administrative remedies. The Prison Litigation Reform Act ("PLRA") generally requires a prisoner to exhaust administrative remedies before filing suit in federal court. Title 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The Supreme Court has interpreted the language of this provision broadly, holding that the phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Thus, the exhaustion provision plainly extends to Plaintiff's allegations. His Complaint must be dismissed, unless he can show that he has satisfied the administrative exhaustion requirement under the PLRA or that Defendants have forfeited their right to raise non-exhaustion as a defense. *See Chase v. Peay*, 286 F.Supp.2d 523, 528 (D. Md. 2003).

The PLRA's exhaustion requirement is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process. *Id*. at 530; *see also Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or final

---

Decl.

administrative review after the prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003), *abrogated on other grounds by Woodford v. Ngo,* 548 U.S. 81 (2006) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (prisoner must follow all administrative steps to meet the exhaustion requirement, but need not also seek judicial review); *Gibbs v. Bureau of Prisons*, 986 F.Supp. 941, 943-44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process).

In Maryland, filing a request for administrative remedy with the Warden of the prison in which one is incarcerated within thirty calendar days of the incident (or of the date the inmate first gained knowledge of the incident or injury) is the first of three steps in the ARP process provided by the DOC to its inmates. If this request is denied, the inmate has thirty calendar days to file an appeal with the Commissioner of Correction. If this appeal is denied, the prisoner has thirty days in which to file an appeal to the Executive Director of the IGO. *See* Division of Correction Directive 185-002.VI.L-N; *see also* Md. Code Ann. Corr. Serv. §§ 10-201 to 10-209.

Defendants' record shows that Plaintiff filed grievances regarding his access to legal materials to the Warden and on appeal to DOC Headquarters. They affirm that he did not, however, proceed to the IGO. Plaintiff claims, however, that he did file an appeal from the Commissioner's decision (or non-decision) to the IGO on April 30, 2010, but as of the date of his responsive pleading, "still have not received any response from the [IGO]." Paper No. 17 at 5. This court is "obligated to ensure that any defects in exhaustion were not procured from the action or inaction of prison officials," *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007). Where, as here, there is an allegation, albeit not offered under verified affidavit or supported by exhibit, that there was a possible hindrance to Plaintiff's exhaustion of the ARP process due to NBCI mailings,

the court declines to grant Defendants' Motion for Summary Judgment for failure to exhaust administrative remedies. The court shall therefore turn to the merits of Plaintiff's access-to-courts claim.

Inmates are entitled to "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Bounds v. Smith*, 430 U.S. 817, 825 (1977); *see also Hudspeth v. Figgins*, 584 F.2d 1345, 1347 (4th Cir. 1978). The Supreme Court clarified the *Bounds* decision by finding that a deprivation of an inmate's right of access to the courts is actionable, but only when the inmate is able to demonstrate actual injury from such deprivation. *See Lewis v. Casey*, 518 U.S. 343, 349 (1996). According to the *Lewis* opinion, the Constitution does not guarantee inmates the ability to litigate every imaginable claim they can perceive, only that they be given the tools necessary "in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement." *Id*. at 355.

Defendants argue that the Complaint should be dismissed because: (1) Plaintiff has been provided constitutionally adequate access to a law library and legal research materials; (2) Plaintiff has failed to demonstrate that he experienced an actual injury or prejudice to his ability to proceed with a particular protected legal claim; (3) Defendants, the NBCI Warden and Commissioner of the Division of Correction, and the Governor of Maryland, are not liable under the doctrines of *respondeat superior* or supervisory liability; and (4) the Complaint contains no specific allegations against Defendant O'Malley. It is Defendants' contention that Plaintiff has neither shown nor claimed that he sustained an actual injury, but has only alleged emotional pain, embarrassment, and inconvenience.

In his opposition Plaintiff seemingly claims that Defendants have violated his First and Fourteenth Amendment rights because they refuse to provide him a law library and law books to look up cases, along with adequate assistance from trained legal persons. Paper No. 17. He further

claims that Defendants are liable under a supervisory liability standard. Plaintiff appears to claim that "even if a prison has a law library that meets either a circuit's requirement or the American Association of law libraries guidelines" a court may still find a constitutional violation of access-to-courts if books are frequently missing. *Id*. He additionally claims that: (1) the librarian and inmate law clerks have no legal training; (2) only one Lexis database is available in each NBCI library and it can be monopolized by an inmate during the weekly one-hour library visit; (3) he is only allowed to order copies of 5 cases per week, when he needs to sometimes order as many as 42 cases per week given the cycle of responsive pleadings; and (4) there has been a 5- to 8-week turnaround time to receive case copies from LASI.

The Court finds that Plaintiff has failed to meet his burden of demonstrating an access-to-courts violation.[3] First, he has more than constitutionally adequate access to legal materials through weekly library visits and individual library passes. While at the central or unit libraries at NBCI Plaintiff has access to legal research books and the Lexis legal database. Further, he may obtain copies of caselaw through LASI service. Moreover, a librarian and inmate law clerks are available to assist him. Finally, and most importantly, Plaintiff has not established injury in his ability to file timely pleadings in his state post-conviction and federal appellate actions. His very own pleadings,

[3] Plaintiff makes a conclusory claim that his rights under the ADA were violated. Defendants do not respond to this allegation. Title II of the ADA, 42 U.S.C. § 12131, *et seq.*, prohibits qualified individuals with disabilities from being excluded from participation in or being denied the benefits of the services, programs or activities of a public entity. To make out a *prima facie* case under the Title II of the ADA, Plaintiff must show that: (1) he is a person with a disability as defined by statute; (2) he is otherwise qualified for the benefit in question; (3) he was excluded from the benefit due to discrimination based upon disability; and (4) the entity that provides the benefits is a public entity. There is no allegation or showing that Plaintiff has a disability under the ADA and that he was denied a benefit because of the disability. Indeed, the record shows that Plaintiff was provided library services. This aspect of the Complaint shall be dismissed.

replete with legal citations and arguments, belie his allegations. No access-to-courts deprivation has been demonstrated.[4]

Having found no genuine dispute of material fact justifying a trial on the merits in this case, the court shall grant Defendants' Motion for Summary Judgment. A separate Order follows.

Date: October 5, 2010

_____________/s/__________
Alexander Williams, Jr.
United States District Judge

---

[4] Further, no personal liability has been alleged or established against Defendants with regard to the claim. To establish supervisory liability on the part of the Warden, Commissioner, and Governor, Plaintiff must show that: (1) they had actual or constructive knowledge that their subordinates were engaged in conduct that violated his constitutional rights; (2) their response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between their inaction and the particular constitutional injury suffered by Plaintiff. *See Shaw v. Shroud*, 13 F.3d 791, 799 (4th Cir. 1994). Plaintiff has provided no evidence demonstrating any of these factors and, in any event, has failed to establish an underlying constitutional deprivation or injury.